IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT

| | | |
|---|---|---|
| **Billy Wilkerson, et al.** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | **CV-10-00201-KD-C** |
| | * | |
| **BP Corporation North America, Inc., et al.** | * | |
| | * | |
| Defendants. | * | |

### BRIEF OF DEFENDANT CAMERON INTERNATIONAL CORPORATION IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Cameron International Corporation ("Cameron") respectfully submits this brief in support of its motion to dismiss the Class Action Complaint in this case (hereinafter the "Complaint") for failure to state a claim upon which relief can be granted against Cameron. See Compl.; [Doc. 1.]

### SUMMARY OF ARGUMENT

All of the property and lost profits damage claims asserted in the Complaint are specifically addressed by the liability and claims payment provisions of the Oil Pollution Act of 1990 (hereinafter "OPA"), 33 U.S.C. § 2701 et seq. Under OPA, the named Plaintiffs were required to present their damage claims to one or more "responsible" parties as designated under OPA. "Notwithstanding any other provision or rule of law," OPA makes any such responsible party liable to pay claims for the damages sought in the Complaint, and provides for recovery against the Oil Spill Liability Trust Fund for any claim or portion of a claim not paid by a responsible party. These comprehensive and exclusive statutory remedies preclude Plaintiffs'

1

claims against Cameron because it is not a designated responsible party.  For this reason, the claims against Cameron in the Complaint should be dismissed without prejudice.

In addition, the conclusory allegations in the Complaint do not satisfy the *Twombley/Iqbal* standards for pleadings under the Federal Rules of Civil Procedure recently announced by the Supreme Court.  The Complaint's allegations are not adequate to survive dismissal because they contain only labels and conclusions and naked assertions that are devoid of factual enhancement.

## KEY ALLEGATIONS IN THE COMPLAINT

For purposes of Cameron's motion, the following are the critical allegations in the Complaint.

The Complaint alleges an explosion and oil spill from the Deepwater Horizon mobile drilling rig on the Outer Continental Shelf in the Gulf of Mexico, beginning on April 20, 2010. (Compl. ¶¶ 1).  The Complaint alleges that the named Plaintiffs harvest or process seafood from the Gulf of Mexico.  (Compl.¶¶ 5-11).  The Complaint alleges harm to natural resources and loss of revenue.  (Compl. ¶¶ 29-30).

"Upon information and belief," Plaintiffs allege that "Cameron manufactured and/or supplied the Deepwater Horizon's blow-out preventers ("BOP's) that failed to operate upon the explosion" at the rig, "which should have prevented the oil spill.  The BOP's were defective because they failed to operate as intended."  (Compl. ¶ 23).

"Upon information and belief," the Complaint further alleges that "the fire, explosion, and resulting oil spill were caused by the joint negligence and fault of Defendants in" certain "non-exclusive particulars."  (Compl. ¶ 43).  Similarly, based "on "information and belief," the

Complaint alleges that the fire, explosion and spill "were caused by the joint wantonness and fault of Defendants" in the same non-exclusive particulars. (Compl. ¶ 49). The only "particular" even conceivably involving Cameron alleges that defendants acted wrongly in "[p]roviding BOP's that did not work properly." (Compl. ¶¶ 43.m., 49.m.). Next, the Complaint alleges that "the actions of Defendants, as described above," created a nuisance. (Compl. ¶¶ 54-55). Last, the Complaint alleges that oil drilling constitutes an ultrahazardous activity supposedly making all defendants strictly liable for damages caused by the spill.

Conspicuously absent is any allegation that Cameron did anything other than sell equipment. The Complaint contains no specific factual allegation that Cameron did anything to cause any equipment to fail as alleged. The Complaint does not allege that Cameron is a responsible party under the OPA. Nor does the Complaint allege that any Plaintiff or class member has made any attempt to present a claim to a designated responsible party pursuant to OPA.

<u>**ARGUMENT**</u>

OPA's comprehensive and exclusive claims payment system precludes Plaintiffs' purported case against Cameron for the damages sought in the Complaint. Under applicable pleading standards, moreover, the Complaint's allegations fail to state a claim upon which relief can be granted against Cameron.

**I.      The Complaint Should Be Dismissed Without Prejudice Because Plaintiffs' Claims Are Encompassed by the Comprehensive and Exclusive Claims Payment System of the Oil Pollution Act of 1990**

OPA establishes a comprehensive federal remedial scheme for the recovery of all damages of the types claimed by Plaintiffs in the Complaint, providing an exclusive statutory

3

procedure designed to provide full and complete recovery for all actual economic harm from designated "responsible parties." This statutory remedial scheme is exclusive; it precludes claimants from asserting rights to recover from other parties the specified categories of damages, particularly including the types of damages alleged in the Complaint. *See Gabarick v. Laurin Maritime (America) Inc.*, 623 F.Supp.2d 741 (E.D. La. 2009). Because Cameron is not a responsible party under OPA, Plaintiffs' claims against Cameron fall outside the OPA's comprehensive and exclusive remedial scheme and thus are precluded. Accordingly, those claims should be dismissed without prejudice.

Importantly, dismissal of Plaintiffs' purported claims against Cameron without prejudice will not impair Plaintiffs' ability to recover for all actual economic harm. Full compensation remains available to Plaintiffs under the strict liability and payment provisions of OPA itself.

### A. The Comprehensive and Exclusive Liability Scheme Enacted in OPA

The OPA system for oil spill liability and payment of claims is explicitly exclusive. OPA mandates that, "*[n]otwithstanding any other provision or rule of law*, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged" is strictly "liable" to pay specified "damages." 33 U.S.C. § 2702(a) (emphasis added). This was not a slip of the Congressional pen. The legislative history makes clear that Congress consciously designed an exclusive liability and payment system. "It is important to note that following enactment, liability and *compensation for oil pollution* removal costs and *damages* caused by a discharge from a vessel or facility (as defined in this [bill]) *will be determined in accordance with this [legislation]*." H.R. CONF. REP. NO. 101-653, 1990 U.S. CODE CONG. & ADM. NEWS ("1990 U.S.C.C.A.N.") 779, 802 ("CONF. REP."), repeating the

4

language of S. REP. NO. 101-94, 1990 U.S.C.C.A.N. 722, 746-47 ("S. REP.") (emphasis added). OPA was meant "to create *a single Federal law providing* cleanup authority, penalties, and *liability for oil pollution*." S. REP., 1990 U.S.C.C.A.N. at 730 (emphasis added).

Under OPA, the President is given the authority to designate the statutory "responsible party" strictly liable for removal costs and specified damages under the Act. 33 U.S.C. § 2714(a). Plaintiffs do not allege that Cameron has been so designated, or that it could have been designated in accordance with the statutory definition. 33 U.S.C. § 2701(32) (owners of vessels and lessees operating offshore facilities). In this case it beyond dispute that the designated responsible parties are a BP entity defendant (lessee/operator of the offshore facility) and a Transocean entity (owner of the vessel).

This strict liability of the designated responsible parties imposed by OPA explicitly extends to, *inter alia*, all damages "for loss of use" of "natural resources" and all "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(A), (C), (E). The responsible parties' strict liability thus encompasses all damages claimed by Plaintiffs in the Complaint.

In this context, the statute sets forth a *mandatory* procedure by which a damaged party is to invoke a responsible party's strict liability. OPA explicitly states that "*all* claims for removal costs or damages *shall* be presented first to the responsible party." 33 U.S.C. § 2713(a) (emphasis added). Only if the responsible party denies the claim or fails to settle it within 90 days may the claimant then sue "the responsible party or guarantor." 33 U.S.C. § 2713(c)(2). Alternatively, under subsection 2713(c), the claimant may "present the claim to" the Oil Spill

Liability Trust Fund ("the Fund") established by 26 U.S.C. § 9509. In that event, the Fund is required to pay any valid claim not paid by the responsible party. 33 U.S.C. § 2713(d).

The remaining remedial provisions of OPA plainly depend on the proper invocation of this claims presentment process channeling liability to designated responsible parties. Any party incurring liability under OPA "may bring a civil action for contribution" in specified circumstances. 33 U.S.C. § 2709. Such a contribution action may be brought within three years of (1) a judgment imposing liability under OPA or (2) entry of a judicially approved settlement with respect to costs or damages encompassed by OPA. 33 U.S.C. § 2717(f)(3)(A) and (B). Furthermore, when a responsible party or the Fund pays a claim, the paying entity "shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law." 33 U.S.C. § 2715(a). And the statute specifically addresses litigation of the subrogated claimants' rights, permitting commencement of such a subrogation claim by the paying party within three years of "the date of payment of such claim." 33 U.S.C. § 2717(f)(4).

By means of its strict liability structure and payment system, therefore, OPA expressly channels the rights of claimants into subrogation litigation to be brought (if at all) by the paying responsible party or the Fund after payment under OPA or litigation to judgment under OPA. Once again, this approach was not inadvertent. Congress plainly understood that these provisions of OPA would dispense with traditional litigation over a claimant's rights or claims against other parties. The pertinent Senate Report expressly noted that "*litigation* or lengthy adjudicatory proceedings *over liability*, defenses, *or the propriety of claims should be reserved for subrogation actions* against dischargers." S. REP., 1990 U.S.C.C.A.N. at 732. It is clear that Congress consciously designed an efficient remedial system, centralizing difficult litigation in a

6

few contribution or subrogation lawsuits – thereby avoiding potentially thousands of individual suits by claimants against third parties.

In conclusion, OPA establishes a streamlined procedure under which claimants present their claims and then recover from the responsible parties or the Fund without having to prove fault. Any disputes over any ultimate liability of other parties are confined to litigation between those who paid the claims, *i.e.,* the responsible parties and/or the Fund, and any third parties who may be liable under traditional legal principles. There is no need or reason for claimants, such as Plaintiffs here, to sue third parties directly, and OPA does not allow it. Indeed, permitting such suits would subvert the statutory scheme and introduce unnecessary layers of complex litigation that Congress deliberately sought to avoid.

## B. The OPA Remedies Foreclose Claims Against Those Who Are Not Responsible Parties

The comprehensive and exclusive OPA remedies preclude any claim against any defendant that is not a responsible party designated pursuant to OPA. That is the precise holding in the *Gabarick* case cited above.

In that case, the defendants argued that OPA pre-empted all claims for damages encompassed by OPA section 2702(b). The plaintiffs argued against statutory preemption, in part relying upon a savings clause in OPA which provides that "[e]xcept as otherwise provided in this Act, this Act does not affect (1) admiralty and maritime law . . ." 33 U.S.C. § 2751(e). But as Judge Lemelle explained in rejecting that argument, this clause simply means, as its literal language indicates, that the OPA "does not affect admiralty and maritime law *except as provided in the Act.*" *Gabarick*, 623 F.Supp.2d at 746 (emphasis added). Because the Act does in fact impose strict liability for specific types of damages, require presentment of claims for those

damages, and prescribe who can be sued and when, it necessarily affects admiralty and maritime law in those respects; "the plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages." *Id.*

The conclusion in *Gabarick* was solidly grounded in Supreme Court precedent interpreting the preclusive effect of other similarly comprehensive statutory remedial schemes. When Congress enacts a comprehensive remedial statute such as the OPA, the new federal remedies replace pre-existing common law or maritime causes of action; "the underlying legal basis" for such causes of action are "pre-empted by [the new federal] statute." *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 22 (1981). As Judge Lemelle further explained in *Gabarick*,

> When considering an issue similar to the one *sub judice*, the Supreme Court recognized the preemption of Federal Common Law and General Maritime Law by Congress's comprehensive legislation in the area of water pollution. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1 (1981). In finding that the Federal Water Pollution Control Act preempted federal common law of nuisance in the area of ocean pollution, the Court stated, "In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate. *Id.* at 15. . . . . OPA explicitly states the damages to which it applies and the remedy to be pursued. The courts are to recognize this direct answer of Congress rather than seek to subvert it by allowing pursuit of the types of claims covered by OPA under the general maritime law . . . .

623 F.Supp.2d at 747. *See also, e.g., Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981) (Congress "occupied the field" by enacting the Clean Water Act).

As recognized in *Gabarick*, congressional intent furnishes "the ultimate touchstone in every pre-emption case." 623 F. Supp. 2d at 750 (quoting *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008)). Here, the intent of Congress, "articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill

8

cases through the enactment of comprehensive federal legislation." *Gabarick*, 623 F.Supp.2d at 750.  Legislation that, as the Senate Report makes clear, was expressly intended to "create a *single Federal law providing* cleanup authority, penalties, and *liability for oil pollution*." Accordingly, Judge Lemelle in *Gabarick* held that "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA, . . . Claimants should pursue claims covered under OPA *only against the responsible party and in accordance with the procedures established by OPA*." 623 F.Supp.2d at 750 (emphasis added).  As asserted against a defendant *not* designated a responsible party, therefore, Judge Lemelle dismissed "all claims covered under 33 U.S.C. § 2702." 623 F.Supp.2d at 751.  In recognition of the statutory mechanism converting the claimants' rights and claims into potential subrogation and contribution claims to be asserted by the responsible parties, the dismissal was entered without prejudice. *Id.*

### C.   OPA Precludes Plaintiffs' Claims Against Cameron

It is beyond dispute that Plaintiffs did not satisfy the statutory requirement of presentment prior to filing suit.  The Complaint was filed within ten days after the *Deepwater Horizon* casualty itself, not 90 days after proper presentment of Plaintiffs' claims.  Once Plaintiffs have satisfied that presentment requirement, Plaintiffs, like other claimants, may invoke the statute's remedial provisions and will need only to demonstrate actual economic loss in order to recover from BP or Transocean.  Alternatively, they can seek payment from the Fund.

Plaintiffs allege that they have suffered damages, not that they have incurred liability under OPA or paid claims for which they might be entitled to be reimbursed under OPA.  They therefore have asserted no claim for contribution under 33 U.S.C. § 2709, or for a subrogated claim under 33 U.S.C. § 2715(a).

9

Instead, the damage claims for injury to natural resources and lost business revenue asserted by Plaintiffs are all encompassed by the damage categories specified in 33 U.S.C. § 2702(b). The necessary conclusion in this case, therefore, is the same as in *Gabarick*: "In light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA, . . . Claimants should pursue claims covered under OPA ***only against the responsible party and in accordance with the procedures established by OPA*.**" In short, Plaintiffs remain free to pursue their statutory remedy against the responsible parties under the OPA, so long as they comply with the mandatory claims presentment procedure. But their Complaint against Cameron should be dismissed (without prejudice to the potential rights of the responsible parties) because their damage claims against Cameron are not permitted by OPA.

## II.     The Complaint Should Be Dismissed With Prejudice for Failure to State a Claim

The Supreme Court has definitively established the pleading standards for a complaint under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007). Under Rule 8(a)(2), "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.*, quoting *Twombley*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949, quoting *Twombley*, 550 U.S. at 557.

10

There is no need to go further into the Supreme Court's analysis. The Complaint in this case fails the *Twombley/Iqbal* standard at the most fundamental level. The Complaint's allegation that Cameron supplied or manufactured equipment that was at some point defective because it ultimately did not work offers, at best, a "label" and a "conclusion." It is far from an factual allegation of actionable conduct by Cameron. Beyond this tautological allegation of defect, moreover, the Complaint contains nothing more than "formulaic recitations" of causes of action against all Defendants collectively. Under *Twombley* and *Iqbal*, the Complaint simply "will not do." Because the Complaint tenders the most naked of assertions without any meaningful factual allegation concerning any responsibility of Cameron, it does *not* "suffice" under Rule 8.

The Court should not hesitate to dismiss Cameron as a defendant in this action on the ground that the Complaint fails to state a claim upon which relief can be granted against Cameron.

Respectfully submitted,

David J. Beck (*pro hac vice*)
BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone:     (713) 951-3700
Facsimile:      (713) 951-3720
dbeck@brsfirm.com

Randal H. Sellers (SELLR3398)
M. Warren Butler (BUTLM3190)
Bryan G. Hale (HALEB6964)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama 35209
Telephone:     (205) 868-6000
Facsimile:      (205) 868-6099
rhs@starneslaw.com
mwb@starneslaw.com
bgh@starneslaw.com

*/s/ A. Danner Frazer, Jr.*
A. Danner Frazer, Jr. (FRAZA9809)
Robert J. Mullican (MULLR1788)
FRAZER, GREENE, UPCHURCH
    & BAKER, L.L.C.
107 St. Francis Street, Suite 2206
Mobile, Alabama 36602
Telephone:     (251) 431-6020
Facsimile:      (251) 431-6030
adf@frazergreene.com
rjm@frazergreene.com

*Attorneys for Cameron International
Corporation*

12

## CERTIFICATE OF SERVICE

I hereby certify that I have on <u>June 23, 2010</u> electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF System which will automatically serve the same via electronic mail or by placing same in the United States mail, properly addressed, first class postage prepaid to the following:

Steve Olen, Esquire
Lucy E. Tufts, Esquire
Robert T. Cunningham, Jr., Esquire
Steven L. Nicholas, Esquire
CUNNINGHAM, BOUNDS, LLC
Post Office Box 66705
Mobile, Alabama 36660

George R. Irvine, III, Esquire
STONE, GRANADE & CROSBY, P.C.
7133 Stone Drive
Daphne, Alabama  36526

*Attorneys for Plaintiffs*

William H. Brooks, Esquire
Marcello Dewaun Gray, Esquire
LIGHTFOOT, FRANKLIN & WHITE, LLC
400 North 20th Street
Birmingham, Alabama 35203

James Andrew Langan, Esquire *Pro Hac Vice*
John T. Hickey, Esquire *Pro Hac Vice*
Richard C. Godfrey, Esquire *Pro Hac Vice*
KIRKLAND & ELLIS, LLP
300 N. LaSalle
Chicago, Illinois 60654

*Attorneys for BP Exploration & Production, Inc., BP America, Inc. and BP Products North America, Inc.*

Blane H. Crutchfield, Esquire
Douglas L. McCoy, Esquire
HAND ARENDALL, LLC
Post Office Box 123
Mobile, Alabama 36601

*Attorneys for Transocean Offshore Deepwater Drilling, Inc. and Transocean Deepwater, Inc.*

John N. Leach, Jr., Esquire
Joseph P. H. Babington, Esquire
Russell C. Buffkin, Esquire
HELMSING, LEACH, HERLONG, NEWMAN & ROUSE, P.C.
Post Office Box 2767
Mobile, Alabama 36652

Bruce W. Bowman, Jr., Esquire
Donald E. Godwin, Esquire
Jenny L. Martinez, Esquire
GODWIN RONQUILLO PC
1201 Elm Street, Suite 1700
Dallas, Texas 75270

Robert Alan York, Esquire
GODWIN RONQUILLO PC
1331 Lamar, Suite 1665
4 Houston Center
Houston, Texas 77010

*Attorneys for Halliburton Energy Services, Inc.*

*s/ A. Danner Frazer, Jr.*
Of Counsel

13