IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BILLY WILKERSON; TESSA WILKERSON; T & E SEAFOOD, INC.; JUBILEE SEAFOOD, INC.; MALAY, INC.; COUNTRY, INC.; and DEEP SEA FOODS, INC., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | CASE NO. 1:10-cv-00201-KD-C |
| v. | ) ) | |
| TRANSOCEAN HOLDINGS, INC.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER, INC.; BP, PLC; BP EXPLORATION AND PRODUCTION, INC.; BP AMERICA, INC.; BP PRODUCTS NORTH AMERICA, INC.; HALLIBURTON ENERGY SERVICES, INC; and CAMERON INTERNATIONAL CORPORATION f/k/a Cooper-Cameron Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY
SERVICES, INC.'S MOTION TO DISMISS AND, ALTERNATIVELY,
FOR A MORE DEFINITE STATEMENT

Defendant Halliburton Energy Services, Inc. ("HESI") respectfully files this memorandum in support of its motions asking the Court to dismiss all claims in the Class Action Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and, alternatively, to require Plaintiffs to file a more definitive statement of their pleading pursuant to Rule 12(e).

In this putative class action, Plaintiffs Billy Wilkerson, Tessa Wilkerson, T & E Seafood, Inc., Jubilee Seafood, Inc., Malay, Inc., Country, Inc., and Deep Sea Foods, Inc., generally assert claims for negligence, wantonness, nuisance and strict liability. Plaintiffs assert that the defendants caused the Deepwater Horizon explosion and subsequent oil spill, allegedly resulting in "loss of revenue to persons and businesses who are being prevented from using the Gulf of Mexico and Alabama's adjoining beaches for diverse activities, including work and to earn a living."  (Complaint ¶ 30)

The Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.* ("OPA") provides the exclusive federal remedy for the categories of oil spill-related damages that Plaintiffs' allege.  As the exclusive remedial scheme for such damages, OPA specifically preempts or displaces maritime tort claims seeking damages caused by oil spills.  Plaintiffs assert state law claims against HESI, sounding in negligence, wantonness, nuisance, and strict liability,[1] attempting to circumvent OPA's exclusive remedial scheme and its preemptive effect on maritime tort claims.  However, Plaintiffs lack state law causes of action against HESI as the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* ("OCSLA")— which applies state law in certain instances on the Outer Continental Shelf—does not apply here.  Plaintiffs claims arise, if at all, under maritime law and are, therefore, preempted by OPA.

---

[1] While Plaintiffs do not specify under what state's law their purported negligence and wantonness claims are asserted, HESI presumes they are asserted under Alabama law, which recognizes a tort for negligence and wantonness.  *See Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679-80 (Ala. 2001) (setting forth the elements of negligence and wantonness).  Though strict liability is part of OPA, Plaintiffs' Complaint makes no mention of OPA.  Rather, Plaintiffs presumably rely on the strict liability standard of an abnormally dangerous or ultrahazardous activity as set forth under Alabama law.  *E. S. Robbins Corp. v. Eastman Chem. Co.*, 912 F. Supp. 1476, 1489 (N.D. Ala. 1995).

In addition, because OPA applies to Plaintiffs' claims, this Court lacks subject matter jurisdiction over such claims due to Plaintiffs' failure to plead and/or comply with the statute's mandatory claims presentment procedure. This failure provides both an independent and additional basis requiring dismissal of Plaintiffs' claims. Moreover, Plaintiffs' OPA claims may only be asserted against a "responsible party" designated under the statute. As HESI is not a designated "responsible party," Plaintiffs' claims must be dismissed.

Even assuming Plaintiffs' negligence, wantonness, strict liability and nuisance claims are properly asserted against HESI, such claims require dismissal under Rule 12(b)(6) because they are deficient under the Supreme Court's *Twombly/Iqbal* analysis and, to the extent they seek damages for Plaintiffs' alleged inability to harvest or process seafood in which they have no proprietary interest, they are barred by the "economic loss" rule established under both Alabama law and federal maritime law.

Plaintiffs' claim for punitive damages, based on wantonness or otherwise, must be dismissed as such damages are not recoverable under either OPA or maritime law for the damages they allege.

Therefore, HESI respectfully moves the Court to dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the event that Plaintiffs' claims are not otherwise barred by OPA, HESI requests, in the alternative, that Plaintiffs be required to file a more definitive statement of their pleading pursuant to Rule 12(e). In support of its motion, HESI submits the following memorandum:

## <u>INTRODUCTION AND SUMMARY</u>

This case arises out of the loss of the Deepwater Horizon, a mobile drilling unit that Transocean owned and operated. (Complaint ¶¶ 1, 21) At the time of the loss, the Deepwater Horizon was completing a well for BP in Mississippi Canyon Block 252, located on the Outer Continental Shelf. (Complaint ¶ 1) The fire, explosion, and subsequent sinking of the Deepwater Horizon resulted in the release of oil from the well. (Complaint ¶ 1) As a result of the release, the Coast Guard first designated BP as a "responsible party" under OPA.[2] HESI is not a designated "responsible party" under OPA.

The lead Plaintiffs in this putative class action allege they harvest and process various types of seafood from the Gulf of Mexico. (Complaint ¶¶ 5-11) Plaintiffs seek to certify a proposed class that includes "[a]ll fishermen, oystermen, crabbers, shrimpers, and seafood processors who derive income and profits from the natural resources in the Gulf of Mexico. . . ." (Complaint ¶ 32) Generally, the Complaint alleges that the negligence of various defendants, including HESI, caused the fire and explosion on board the Deepwater Horizon, its sinking, and the resulting oil spill. (Complaint ¶¶ 21-29)

Ten days after the loss of the Deepwater Horizon, Plaintiffs filed this suit claiming loss of revenue to persons and businesses who are being prevented from using the Gulf of Mexico and Alabama's adjoining beaches for diverse activities, including

---

[2] Courts may consider facts not specifically alleged in the Complaint when considering a 12(b)(6) motion. *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006); *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-CV-20678, 2008 U.S. Dist. Lexis 49452, at * 3-4 (S.D. Fla. June 27, 2008); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("materials that are part of a public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(B)(6) motion").

work and to earn a living. (Complaint ¶ 30) The perfunctory Complaint is devoid of any allegations detailing the specific damages that Plaintiffs sustained, or any HESI wrongdoing that has caused damage to Plaintiffs. As discussed below, Plaintiffs' generalized, conclusory allegations fail to establish subject matter jurisdiction and fail to state a claim upon which relief can be granted.

## ARGUMENTS AND AUTHORITY

### A.   Legal Standard on Motion to Dismiss under Rule 12(b)(1) and (6)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the court lacks subject matter jurisdiction. A motion to dismiss filed pursuant to Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); s*ee also McElmurray v. Consol. Gov't. of Augusta Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). A court may decide such a motion on one of three bases: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts. *McElmurray*, 501 F.3d at 1251; *Ynclan v. Dep't of the Air Force,* 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)). In a Rule 12(b)(1) motion, the burden of proving that jurisdiction exists falls to the party asserting jurisdiction. *Ramming,* 281 F.3d at 161; *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 n.9 (11th Cir. 1982).

Similarly, Rule 12(b)(6) provides defendants a mechanism early in litigation for challenging a plaintiff's right to recover on a particular set of facts or a particular cause of

action.  To that end, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  Although courts accept well-pleaded facts as true, the U.S. Supreme Court recently rejected the previously-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Coventry First, LLC v. McCarty*, No. 09-11682, 2010 U.S. App. LEXIS 9227, at *4-5 (11th Cir. May 5, 2010) (citing *Castro v. Secretary of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006)). Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56.

**B.    Plaintiffs' Claims, if Any, Are Governed by Federal and/or General Maritime Law, not State Law.**

Plaintiffs assert claims against all defendants, including HESI, generally for negligence, wantonness, nuisance, and strict liability arising under the laws of an unspecified state.  However, the damages they assert are precisely the types of damages that Congress intended to be recovered exclusively under OPA.  Plaintiffs' attempt to make an end run around OPA must fail.  Further, Plaintiffs have no legally viable state

law claims for negligence, wantonness, nuisance, or strict liability against HESI because, to the extent such claims are viable outside of OPA (and they are not), they arise under general maritime law, not under state law, and OPA specifically preempts general maritime law for claims recoverable under the statute.

But for Congress's enactment of OPA, Plaintiffs' claims would necessarily arise under the Court's admiralty jurisdiction, and general maritime law would apply, not state law.  Although Plaintiffs do not specifically plead admiralty jurisdiction, federal maritime law applies.  *See* Fed. R. Civ. P. 9(h) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.")

The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* ("OCSLA") is the only possible basis for applying state law to Plaintiffs' claims arising outside of a state's territorial waters.  OCSLA operates so as to apply, as proxy for federal law, the law of "each adjacent State" to the situs of certain locations on the Outer Continental Shelf.  *See* 43 U.S.C. § 1333(a)(2)(A); *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 480-81 (1981) ("OCSLA extends the 'Constitution and laws and civil and political jurisdiction of the United States' to the subsoil and seabed of the Outer Continental Shelf and to *'artificial islands and fixed structures*' built for discovery, extraction, and transportation of minerals. . . . All law applicable to the Outer Continental Shelf is federal law, but to fill the substantial 'gaps' in the coverage of federal law, OCSLA borrows the 'applicable and not inconsistent' laws of the adjacent States as surrogate federal law."

(citations omitted) (emphasis added)); *Texaco Exploration and Production, Inc. v. Amclyde Engineered Products Co, Inc.*, 448 F.3d 760, 772 (5th Cir. 2006) (same).

To determine whether OCSLA applies, and thus whether adjacent state law applies, the Court must employ a three-part test:  (1) the controversy must arise on a situs covered by OCSLA (*i.e.*, the subsoil, seabed, or artificial structure permanently or temporarily attached thereto); (2) Federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with federal law.  *See Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 n.3 (5th Cir. 2009), *citing Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 355 (1969).

The distinction between a "fixed platform" and a "vessel" is important for purposes of determining whether a controversy arises "on a situs covered by OCSLA." In *Offshore Logistics, Inc. v. Tallentire*, the Supreme Court stated:

> The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State, and *not as vessels*, for purposes of defining the applicable law because maritime law was deemed inapposite to these *fixed structures*.

477 U.S. 207, 217 (1986) (emphasis added).  Thus, the purpose of OCSLA is to apply state law to actions arising on or related to fixed platforms or structures attached to the Outer Continental Shelf, while maritime law continues to govern actions arising on or related to a "vessel."

Applying the first prong of this test demonstrates that the Deepwater Horizon was *not* "a situs covered by OCSLA."  The Deepwater Horizon was neither an "artificial island" nor a "fixed structure" to which OCSLA applies.  Plaintiffs concede as much, characterizing the Deepwater Horizon as "a semi-submersible mobile drilling rig, which

was performing completion operations for BP . . . on the outer Continental Shelf, at the site from which the oil spill now originates."  (Complaint ¶ 21)  Plaintiffs assert nowhere in their Complaint that the Deepwater Horizon was a fixed platform.  Indeed, consistent with Plaintiffs' description, the Deepwater Horizon—a free-floating, semisubmersible mobile drilling rig—was a "vessel" operating in navigable water at all relevant times.  Courts have consistently held that semi-submerged, mobile rigs like the Deepwater Horizon are "vessels," and not fixed platforms.[3]  *See Manuel v. P.A. W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 351-52 (5th Cir. 1998) (holding that drilling craft was a vessel because it was a "highly mobile unit" deployed to nineteen different sites over two years); *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir. 1991) ("We have consistently applied general maritime law [in Jones Act cases] . . . to accidents aboard special-purpose watercraft such as submersible, semi-submersible, jack-up, and other similar rigs."); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n.5 (5th Cir. 1986) (finding semi-submersible drilling rig to be "indisputably a vessel"); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984) (finding submersible drilling barge to be

---

[3] That the Deepwater Horizon was a "vessel in navigation" is further supported by facts alleged in the public record.  For example, certain Transocean employees and/or representatives of deceased persons who were aboard the Deepwater Horizon on April 10, 2010, have filed Jones Act suits asserting damages for injuries sustained in their capacity as "seamen" under the Jones Act.  In doing so, these plaintiffs have asserted admiralty jurisdiction and the application of maritime law, claiming that their injuries or damages were sustained as members of the crew on board Deepwater Horizon, "a vessel within the meaning of the Jones Act, 46 U.S.C. § 30104, *et seq.*"  *See, e.g.*, Plaintiffs Stephen and Sara Stones' Petition in Intervention at ¶¶ 9-10, 12, *Kleppinger v. Transocean Deepwater Offshore Drilling, Inc.*, Case No. 4:10-cv-01851 (S.D. Tex.).

Additionally, Transocean, the owner of the Deepwater Horizon, and related entities have filed a Petition under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, seeking to have their liability capped for an amount equal to the value of the "vessel."  These Transocean entities have filed such Petition in their capacities as the "owner of the vessel."  *See* 46 U.S.C. §§ 30505(a), 30506(a)-(b); *see also* 46 U.S.C. § 30511(a) ("The *owner of a vessel* may bring a civil action in a district court of the United States for limitation of liability under this chapter." (emphasis added)).

a "vessel" because it was "highly mobile" due to routine relocation); *Case v. Omega Natchiq, Inc.*, No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *16, (S.D. Tex. July 10, 2008) ("In contrast to production platforms, semisubmersible drilling rigs are generally considered vessels under the Jones Act.").   As Plaintiffs also concede, the Deepwater Horizon was in the midst of "completion operations" when it sank, meaning it was "mobile" in nature—intending to move off the well-site location to allow for production operations of a more permanent nature.   (Complaint ¶ 21)   Because the alleged torts neither occurred nor arose on a fixed platform or other artificial island over the Outer Continental Shelf, OCSLA does not apply.   *See Grand Isle Shipyard*, 589 F.3d at 784 ("In a tort action, if the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met.").

Under the second prong of the admiralty jurisdiction test, maritime law applies of its own force to alleged torts arising out of the Deepwater Horizon incident.   To determine whether admiralty jurisdiction exists over the alleged torts at issue, both a "location test" and a "connection-to-maritime-activity" test must be satisfied.   *In re Katrina Canal Breaches Litig.*, 324 Fed. Appx. 370, 376 (5th Cir. 2009).   The "location test" requires the tort to have occurred on navigable water or, for an injury suffered on land, to have been caused by a vessel on navigable water.   *Id.*   Plaintiffs clearly allege that the torts at issue occurred on navigable water.   The majority of the allegedly negligent acts purportedly occurred *on* the Deepwater Horizon, while it was afloat in navigable waters in the Gulf of Mexico.   (*See* Complaint ¶¶ 1, 43(a)-(p), 49(a)-(p)) Moreover, any alleged injuries to fishing grounds or other natural resources undoubtedly

occurred in the Gulf of Mexico's navigable waters.  Thus, the location test for admiralty jurisdiction is satisfied.

Even assuming the Complaint can be construed as alleging damages to shoreline real or personal property,[4] Plaintiffs claims still would arise under maritime law and not state law by virtue of the Admiralty Extension Act, 46 U.S.C. § 740, which extends admiralty and maritime jurisdiction to "all cases of damages or injury, to person or property, *caused by a vessel on navigable water,* notwithstanding that such damage or injury be done or consummated on land." (emphasis added).  *See also Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1031 (5th Cir. 1985), *cert. denied*, 477 U.S. 903 (1986) (Under Admiralty Extension Act, admiralty jurisdiction extends to claims for shoreside damages resulting from chemical spill caused by colliding ships on navigable waterway); *In re the Exxon Valdez*, 767 F. Supp. 1509, 1512 (D. Ala. 1991) (Under Admiralty Extension Act, damages occurring on land due to oil spill emanating from vessel in navigable waters are maritime torts subject to admiralty jurisdiction).

With respect to the separate "connection-to-maritime-activity" test, "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce." *Theroit v. Bay Drilling Corp.*, 791 F.2d 527, 538-39 (5th Cir. 1986); *Pippen v. Shell Oil Co.*, 661 F.2d 378, 384 (5th Cir. 1981).  Further, oil spill cases involving seagoing vessels that spill oil directly into navigable waters have been held to be connected to maritime activity, and claims arising out of such oil spills (at least prior to the enactment of OPA) fall under general maritime law.  *In re Exxon Valdez*, 767 F. Supp. at 1512-14 (damage

---

[4] Plaintiffs vaguely allege that the oil spill is preventing Plaintiffs and/or putative Class Members "from using . . . Alabama's adjoining beaches for diverse activities[.]"  (Complaint ¶ 30)

claims resulting from oil spill cognizable under maritime law because they were "caused by a vessel on navigable water"); *Puerto Rico v. S.S. Zoe Colocotroni*, 628 F.2d 652, 672 (1st Cir. 1980), *cert. denied*, 450 U.S. 912 (1981).

Had OPA not been enacted, Plaintiffs' claims would have arisen, if at all, under general maritime law. OCSLA does not bring such claims within the purview of state law. Accordingly, Plaintiffs' improperly pled state law claims should be dismissed. Even if Plaintiffs' ambiguous claims are construed to assert maritime tort claims, such claims are preempted or displaced by OPA.

C.     **Plaintiffs' Alleged Damages Demonstrate that OPA Is Their Exclusive Remedy.**

Plaintiffs' Complaint fails to mention OPA, couching all claims in terms of negligence, wantonness, nuisance, and strict liability. OPA, however, is the exclusive remedy for the types of damages alleged. Plaintiffs cannot circumvent OPA with general common law allegations. OPA displaces all such claims and otherwise applicable federal laws as they pertain to causes of action and the recovery of damages arising from oil spills. OPA was enacted by Congress in the wake of the Exxon Valdez oil spill to provide a prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims. *Gatlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999). The statute provides a comprehensive statutory framework for parties injured by oil spills in navigable waters to make claims to a designated responsible party for recovery of costs and damages. *See* 33 U.S.C. § 2701, *et seq*. OPA "represents Congress's attempt to provide a comprehensive framework in the

area of marine oil pollution." *Tanguis v. M/V WESTCHESTER,* 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999)).  *See also United States v. Bodenger*, No. 03-272, 2003 U.S. Dist. LEXIS 16987, at \*5-6 (E.D. La. Sept. 26, 2003) (noting that OPA "established a comprehensive Federal oil spill response and liability legislative framework").  Its purpose is "to promote settlement and avoid litigation." *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).

Under OPA, injured parties may recover a broad range of damages from the responsible party:

(A) Natural resources

Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

(B) Real or personal property

Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

(C) Subsistence use

Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

(D) Revenues

Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the

Government of the United States, a State, or a political subdivision thereof.

(E) Profits and earning capacity

Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

(F) Public services

Damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

33 U.S.C. § 2702(b).

OPA provides the ***exclusive federal remedy for recovery of oil spill related damages***, preempting non-OPA-based claims for recovery of those damages. *South Port Marine, LLC v. Gulf Oil Ltd. P'ship,* 234 F.3d 58, 65 (1st Cir. 2000) ("Congress intended the OPA to be the exclusive federal law governing oil spills."); *Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) ("This Court finds that an evaluation of the *Oswego* factors indicates that OPA preempts general maritime law claims that are recoverable under OPA.").  Addressing the preemptive effect of OPA, it has been held that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA." *Gabarick*, 623 F. Supp. 2d at 750-51.  *See also National Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("Because OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does

not apply to recovery of these types of damages.").  "OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons." *National Shipping,* 924 F. Supp. at 1447.

Consequently, Plaintiffs' attempt to recover oil spill related damages covered by OPA under negligence, wantonness, nuisance, or strict liability theories must fail.  In the Complaint, Plaintiffs complain about "detrimental effects upon the Gulf of Mexico's marine and coastal environments" and contend that the "oil spill and the contamination have caused and will continue to cause loss of revenue to persons and businesses who are being prevented from using the Gulf of Mexico and Alabama's adjoining beaches for diverse activities, including work and to earn a living."  (Complaint ¶¶ 1, 30)  Clearly, these damage categories are encompassed by § 2703(b) of OPA.  Because "Congress intended OPA to be the exclusive federal law governing oil spills," *South Port Marine*, 234 F.3d at 65-66, Plaintiffs' state commom law claims for recovery of oil spill related damages fail as a matter of law, demanding dismissal under 12(b)(6).

1.    **Plaintiffs' failure to present their claims through the OPA-mandated claims process deprives the Court of federal subject matter jurisdiction and precludes Plaintiffs from asserting a legally viable cause of action for recovery of damages related to the oil spill.**

Although OPA provides the exclusive remedy for oil spill-related damages, Plaintiffs failed to follow the Congressionally-mandated claims process in OPA. Accordingly, this Court's subject matter jurisdiction cannot be properly invoked by the Plaintiffs, and the Complaint as to HESI should be dismissed on this independent, jurisdictional basis.

OPA provides a comprehensive statutory framework for parties who suffer damages from oil spills in navigable waters to make claims to a designated responsible party for recovery costs and damages.  *See* 33 U.S.C. § 2701, *et seq*.  Parties claiming to have suffered damages from spills are required to present their claims to the responsible party before filing a lawsuit claiming damages:

> **[A]ll claims** for removal costs or damages **shall** be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title.

33 U.S.C. § 2713(a) (emphasis added).  Claimants may only initiate suit *after a claim is presented in accordance with § 2713(a)* and the responsible party denies all liability for the claim or the claim is not settled by payment within ninety days after the date upon which the claim was presented.  33 U.S.C. § 2713(c).  Presuit presentment is mandatory:

> The clear text of § 2713 creates a ***mandatory condition precedent*** barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a) and either:  (1) all responsible parties deny all liability; or (2) the claim is not settled by payment within 90 days after (A) the claim was presented, or (B) advertising was begun under section 2714(b) of the Act, whichever is later.  33 U.S.C. § 2713(c).

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *LeBoeuf v. Texaco*, 9 F. Supp. 2d 661, 666 (E.D. La. 1998) (holding that section 2713 creates "mandatory conditions precedent to filing an action in either state or federal court"); *Marathon Pipe Line Co. v. LaRoche Indus. Inc*., 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates

dismissal when that provision is applicable and not complied with by the claimant."). OPA's plain language precludes the right to proceed in court without first exhausting the administrative process. *See Boca Ciega Hotel, Inc.,* 51 F.3d at 238 (noting that OPA's use of the absolute words "all" and "shall" indicate its mandatory and exclusive nature with respect to its covered damages); *Johnson v. Colonial Pipeline Co.,* 830 F. Supp. 309, 310-11 (E.D. Va. 1993) (dismissing oil damage and removal claims upon finding that "[i]n this case, plaintiffs have not complied with the presentation **requirement** of OPA") (emphasis added); *see also* S. Rep. No. 101-94 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 732 (hereinafter "Senate Report") (noting that "the bill **requires** claims to be presented in the first instance to the discharger, where known") (emphasis added).

In this case, Plaintiffs do not allege that they have made a presuit claim to the responsible party in accordance with OPA. As a result, this Court lacks jurisdiction to hear any of Plaintiffs' claims related to the oil spill, and such claims should be dismissed.

> **2.    Plaintiffs' sole remedy for their alleged damages from the oil spill, if any, lies against the "responsible party" designated under OPA, not against HESI.**

Plaintiffs' failure to present their claims under OPA warrants a dismissal of the case as a whole. Even if Plaintiffs were subsequently to satisfy the OPA claims presentment process, their sole remedy, if any, lies against the designated responsible party or parties, not against HESI. Under OPA, the responsible party for the vessel or facility from which an oil spill emanates is liable for all associated damages and removal costs:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, **each responsible party** for a vessel or facility from which oil is discharged … **is liable for the removal costs and damages** specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a) (emphasis added).  In the case of an oil spill originating from an offshore vessel or facility, OPA defines the "responsible party" as "the lessee or permittee of the area in which the facility is located."  33 U.S.C. § 2701(32)(C).  The Coast Guard designates the responsible party who is strictly liable for recovery costs and economic damages.  33 C.F.R. § 136.305.  *See also Gabarick*, 623 F. Supp. 2d at 744. ("When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source.  A responsible party for a vessel from which oil is discharged is strictly liable for removal costs and damages."); Senate Report, at 723 (noting that "wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages.").

Recourse against the designated responsible party is the sole remedy for those injured by an oil spill.   "OPA only imposes liability against responsible parties." *National Shipping*, 924 F. Supp. at 1446.  Any recovery as against third-parties is limited to an action for contribution *by the responsible party*, not direct claims by those alleging injury resulting from an oil spill.  *See* 33 U.S.C. § 2709.  As the court in *Gabarick* explained:

> [i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA discussed earlier, it appears that Claimants should pursue claims covered under OPA **only against the responsible party and in accordance with the procedures established by OPA**. **Then, the responsible party can take action to recover against third parties.**

623 F. Supp. 2d at 750 (emphasis added).  Plaintiffs, therefore, can only state viable claims against the responsible party and only in compliance with OPA's mandatory prerequisites.

Here, Plaintiffs cannot assert any viable claims against HESI because it is not a designated responsible party.  As in *Gabarick*, Plaintiffs must pursue their claims under OPA, and they may only do so against a designated responsible party.  HESI is not, as a matter of law, liable to Plaintiffs for their alleged damages resulting from the oil spill. Accordingly, the Court should dismiss all such claims with prejudice under Rule 12(b)(6).

**D.     Plaintiffs' Claims Against HESI Fail to Contain Sufficient Factual Material, Accepted as True, to State a Claim for Relief that Is Plausible on Its Face.**

Independent of the OPA displacement and jurisdictional requirements, the Complaint also fails to state a claim to relief that is plausible on its face due to inherent and fatal pleading deficiencies.  Plaintiffs do not aver *any* specific facts supporting their negligence, wantonness, nuisance, or strict liability claims against HESI.  Indeed, other than identifying HESI as a "foreign corporation doing business in the State of Alabama," HESI's entire relationship to the Deepwater Horizon is presented as a single paragraph, which states:

> Halliburton was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion and resulting oil spill.

(Complaint ¶ 24)  The only factual allegation presented in this paragraph is the general statement that "Halliburton was engaged in cementing operations of the well and well

cap."  The remainder of the paragraph classifying the performance of the cementing operation as "upon information and belief, improperly and negligently performed," as well as the entirety of paragraphs 42-46, 48-52, 54-57, and 59-62, are legal conclusions that are not entitled to any presumption of truth.  Neither is the simple juxtaposition with the phrase "contributing to the fire, explosion and resulting oil spill."  These are all simply conclusions drawn by the drafter of the Complaint; they are not factual averments.

It is not enough for Plaintiffs to simply aver that HESI was "negligent," that it acted in a "wanton" manner, or that the nonspecific acts of the defendants generally were "abnormally dangerous and/or ultrahazardous," without alleging sufficient facts to support the plausibility of that legal conclusion.  A Rule 12(b)(6) motion tests the sufficiency of the pleadings.  Although the court accepts well-pleaded facts as true, the Supreme Court has rejected the formerly-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim."  *Twombly*, 550 U.S. at 561-62.  Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  This standard "does not require 'detailed factual allegations,' ***but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation***."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570) (emphasis added).

The courts' application of *Twombly* and *Iqbal* proceeds in two steps.  First, the court determines which allegations in the complaint are not entitled to the assumption of

truth.  *Id.* at 1950.  Courts reject attempts by plaintiffs to simply recite the elements of a

cause of action or to "dress up" legal conclusions as factual allegations in determining

whether a complaint contains sufficient factual information to "state a claim to relief that

is plausible on its face."  *See Twombly*, 550 U.S. at 555-56 ("[A] formulaic recitation of

the elements of a cause of action will not do."); *American Dental Assoc. v. Cigna Corp.*,

No. 09-12033, 2010 U.S. App. LEXIS 9928, at *11-12 (11th Cir. May 14, 2010) (quoting

*Twombly*, 550 U.S. at 555).

Second, the court considers the remaining factual allegations that are entitled to

the assumption of truth to determine whether they plausibly suggest an entitlement to

relief.  *Iqbal*, 129 S. Ct. at 1951.

> The plausibility standard is not akin to a "probability requirement," but it
> asks for more than a sheer possibility that a defendant has acted
> unlawfully.  Where a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it stops short of the line between possibility
> and plausibility of "entitlement to relief."

*Id.* at 1949 (citing *Twombly*, 550 U.S. at 557).  A claim only has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.  *Id*.  It follows that "where the

well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

entitled to relief.'"  *Id.*; *see also American Dental Assoc.*, No. 09-12033, 2010 U.S. App.

LEXIS 9928, at *14.  In such cases, the complaint should be dismissed pursuant to Rule

12(b)(6).

Applying this pleading standard to Plaintiffs' claims against HESI requires dismissal of all such claims. First, Plaintiffs' assertions of each of its claims, at best dressed-up legal conclusions, are not entitled to the assumption of truth. And second, the only remaining factual allegations entitled to the assumption of truth as to HESI are its corporate status and the fact that it was purportedly performing unspecified cementing operations of the well and well cap. Those factual allegations do not plausibly suggest an entitlement to relief and are not sufficient for the Court to draw any reasonable inference that HESI is liable for the sinking of the Deepwater Horizon and subsequent oil spill. *See Iqbal*, 129 S. Ct. at 1951.

Negligence under maritime law is the failure to use reasonable care under the circumstances. *National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1450 (E.D. Va. 1996) (*citing* 8 Benedict on Admiralty § 3.02[B][4] (7th ed. 1995)). The elements of a maritime claim of negligence are identical to those of its land-based counterpart, *i.e.*, a duty owed and breach of that duty, which proximately causes the plaintiff to suffer damages. *Kentucky Timber Exports v. Massan Shipping Indus.*, No. 93-0110-AH-C, 1996 U.S. Dist. LEXIS 455, at *24 (S.D. Ala. Jan. 11, 1996) (citing *Uncle Ben's Int'l Div. v. Hapag-Lloyd*, 855 F.2d 215, 216-17 (5th Cir. 1988)); *Consolidated Aluminum Corp. v. C. F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987), *cert. denied*, 486 U.S. 1055, 100 L. Ed. 2d 922, 108 S. Ct. 2821 (1988). The resultant harm must be reasonably foreseeable. *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991). Plaintiffs set forth their singular allegation that HESI "was engaged in cementing operations of the well and well cap" without any regard to the substance of their claims—

negligence, wantonness,[5] nuisance, and strict liability.  The Court cannot even begin the analysis of Plaintiffs' claims with this one "fact."  Plaintiffs' allegations show no breach of duty in the cementing project.  Plaintiffs state no facts regarding proximate cause or cause-in-fact to support the negligence, wantonness, or nuisance claims.   Likewise, Plaintiffs fail to make any factual allegations asserting that HESI engaged in any abnormally dangerous or ultrahazardous activity to justify strict liability.[6]  And, as is shown below, the Complaint fails to contain a sufficient factual recitation of the damages allegedly suffered.   Thus, under *Twombly*, *Iqbal* and their progeny, the Court should dismiss Plaintiffs' claims against HESI in their entirety under Rule 12(b)(6).

### E.     Alternatively, Plaintiffs Should Be Required to File a More Definitive Statement Detailing the Facts, if Any, Supporting Their Claims Against HESI.

To the extent Plaintiffs' claims survive preemption under OPA (and they should not), Plaintiffs alternatively should be required to file a more definitive statement of their pleading pursuant to Rule 12(e) given the vague and ambiguous allegations against HESI. The Complaint fails to aver any factual statements demonstrating Plaintiffs' plausible entitlement to relief, including but not limited to any facts showing that HESI violated any duty to Plaintiffs or that any wrongdoing by HESI proximately caused the damages of which Plaintiffs complain.  Therefore, at a minimum, and in order to permit HESI to

---

[5] This district has summarily rejected claims for wantonness under general maritime law.  *Hollinger v. Kirby Tankships, Inc.*, 910 F. Supp. 571, 572 (S.D. Ala. 1996); *Frantz v. Brunswick Corp.*, 866 F. Supp. 527, 532 (S.D. Ala. 1994).

[6] Alabama has also limited strict liability cases to blasting cases.  *E. S. Robbins Corp.*, 912 F. Supp. at 1489 ("Indeed, in Alabama, [the strict liability] doctrine has been limited primarily to blasting cases.")

reasonably prepare a response to Plaintiffs' claims, Plaintiffs should be required to file a more definitive statement of their pleading pursuant to Rule 12(e).

**F.    In the Alternative, to the Extent Plaintiffs Seek Damages for Their Alleged Inability to Harvest or Process Seafood from the Gulf of Mexico, the Economic Loss Rule Bars Such Claims Against HESI as Plaintiffs Cannot Show Damage to a Proprietary Interest.**

Assuming *arguendo* that Plaintiffs' negligence/wantonness claims against HESI are not otherwise barred by OPA (*see supra*), the economic loss rule bars any state or maritime common law claims seeking economic damages.  The Complaint does not allege that Plaintiffs have a proprietary interest in fishing grounds or the seafood taken from such grounds.  Nor does the Complaint allege damage to any specific proprietary interest.  Therefore, Plaintiffs cannot recover for economic losses.  Despite their assertion that they are commercial fishermen and processors, any effort by Plaintiffs to plead such an interest would be futile.  Plaintiffs, as a matter of law, lack a proprietary interest in aquatic life; ownership of aquatic life is vested in the state.  No person has the inherent right to fish in the public waters of the State.  Ala. Code § 9-11-81 (1975); *Members of the House of Reps. Ala.*, 665 So. 2d 1378, 1380 (Ala. 1995) (stating that the right of any individual, partnership, or corporation to reduce fish from their natural free state to one of private ownership is a privilege, as opposed to a vested right, granted by the state and subject to conditions, regulations and limitations placed on that privilege by the legislature).  Plaintiffs lack standing to assert claims for damages to aquatic life.  *See* Ala. Code § 9-11-81; *see also Skrmetta v. Ala. Oyster Com.*, 232 Ala. 371, 373 (Ala. 1936) ("The State of Alabama holds the propriety of this soil for the conservation of the public

rights of fishery thereon, and may regulate the modes of that enjoyment so as to prevent the destruction of the fishery.").  The right to fish does not convey property right or ownership in the fishery resource.  *See Skrmetta*, 232 Ala. at 373 ("The State of Alabama owns the absolute property in the oyster-beds and oysters in her navigable waters, holding it in trust for the use and benefit of her people . . . .").  Plaintiffs' failure to plead physical injury to a proprietary interest, and lack of any such proprietary interest, is dispositive, barring them from recovery for economic losses against HESI.

Nor can a plaintiff recover for economic loss under general maritime law absent physical damage to a proprietary interest.  *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927).  "It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."  *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006).  *See also Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort.");  *M/V Testbank*, 752 F.2d at 1022;[7] *Kingston Shipping Co. v. Roberts,* 667 F.2d 34 (11th Cir. 1983).  The rule's purpose is to prevent limitless liability for negligence and the filing of lawsuits of a highly speculative nature.  *Akron Corp. v. M/T Cantigny*, 706 F.2d 151, 153 (5th Cir. 1983).

---

[7] Although *Testbank* recognizes a narrow exception to this application of the economic loss rule, it is not applicable here because Plaintiffs do not allege any facts establishing a course of business conduct in which they make commercial use of a public right to fish in any specifically defined areas allegedly damaged by the oil spill.  Instead, Plaintiffs merely allege they are commercial fishermen and processors in the Gulf of Mexico.  (Complaint ¶¶ 5-11).  That is insufficient.

Here, Plaintiffs seek recovery exclusively for economic losses. Specifically, they seek recovery for loss of income and earning capacity. (Complaint ¶ 30). Such alleged damages relate exclusively to their purported inability to continue commercial fishing operations somewhere in the Gulf of Mexico. Although they might be able to recover for those injuries from the responsible party under OPA, they cannot do so here against HESI under a general theories of negligence, wantonness, nuisance, and strict liability because OPA preempts such claims and, independently, because the economic loss rule precludes their recovery under both state law and general maritime law. Accordingly, Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6).

**G.      Plaintiffs Fail to Demonstrate any Injury in Fact.**

Standing is a threshold matter to the subject matter jurisdiction inquiry, and a lack of standing requires dismissal. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). In order to establish standing to recover for their claims, Plaintiffs must demonstrate an "injury in fact" that is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc*., 524 F.3d 1229, 1232 (11th Cir. 2008).

Perhaps because Plaintiffs filed their Complaint only ten days after the Deepwater Horizon incident, Plaintiffs' only allege damages to the effect that: "The oil spill and the contamination have caused and will continue to cause loss of revenue to persons and businesses who are being prevented from using the Gulf of Mexico and Alabama's adjoining beaches for diverse activities, including work and to earn a living." (Complaint

¶ 30)[8]  However, this is insufficient to show a concrete and particularized injury.  *See Cone Corp. v. Fla. Dep't of Transp*., 921 F.2d 1190, 1205-06 (11th Cir. 1991) (holding plaintiffs' complaint should be dismissed because the injury alleged was supported only by conclusory allegations).

For future harm to satisfy the "injury in fact" requirement, the injury must be imminent.  *Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require"); *see also Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1152-53 (2009) (refusing to replace requirement of "imminent" harm with requirement of "realistic threat" of harm in the reasonably near future).  Failing to allege when, where, or how a future injury will occur is insufficient to show an actual or imminent injury for purposes of standing.  *See Elend v. Basham*, 471 F.3d 1199, 1206, 1209 (11th Cir. 2006) ("It is not enough that the [plaintiff]'s complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements.") (internal quotations omitted).

Plaintiffs provide no details regarding how they have been damaged, nor details demonstrating when, where, or how their future injuries will occur.  Therefore, based on the vague and generalized damage allegations in the Complaint, Plaintiffs lack standing to bring their asserted non-OPA claims, and dismissal of all such claims is required.

---

[8] Plaintiffs also claim to have been "damaged by their inability to rent properties owned and/or managed by them on or near the Gulf of Mexico as a direct result of the oil spill and the fear of the public of the deleterious effects of the spill," however, Plaintiffs fail to make any allegations of owning or managing property to uphold this claim of damage, or of deriving any income from ownership or management of property.  (*Compare* Complaint ¶¶ 5-11, 32, *with* Complaint ¶ 51)  HESI assumes that inclusion of paragraph 51 in the Complaint is a drafting error.

**H.      Plaintiffs Cannot, As a Matter of Law, Recover Punitive Damages from HESI.**

In addition to economic damages claims for lost revenue, Plaintiffs also demand recovery of punitive damages.  (Complaint ¶ 52)  As a matter of law, however, they cannot recover punitive damages.  OPA, which provides Plaintiffs' exclusive remedy for damages resulting from the oil spill, does not permit the recovery of punitive damages.  *South Port Maine*, 234 F.3d at 66.   The statute's comprehensive list of recoverable damages is exclusive as "Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution."  *Id*. at 65.  Thus, as a matter of law, Plaintiffs cannot recover punitive damages even if their claims are construed as maritime tort claims.  *See Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1133 (D. Or. 2001) (holding that OPA precludes recovery of punitive damages under any general maritime law theory for which OPA could provide relief).  Likewise, based upon the prohibition on punitive damages, the claim for wantonness must be dismissed.  *Hollinger*, 910 F. Supp. at 572; *Frantz*, 866 F. Supp. at 532.  Plaintiffs' demand for the recovery of punitive damages, therefore, fails as a matter of law.

CONCLUSION

For the reasons set forth above, subject matter jurisdiction has yet to attach for Plaintiffs' claims and, separately, they have failed to plead viable claims against HESI as a matter of law.  Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claims against HESI in their entirety.  Alternatively, Plaintiffs should be required to file a more definitive statement of their pleading pursuant to Rule 12(e).

Respectfully submitted this 23rd day of June, 2010.

**GODWIN RONQUILLO PC**

DONALD E. GODWIN (GODWD5022) (*pro hac vice*)
Email    dgodwin@godwinronquillo.com
BRUCE W. BOWMAN, JR. (*pro hac vice*)
Email    bbowman@godwinronquillo.com
JENNY L. MARTINEZ (*pro hac vice*)
Email    jmartinez@godwinronquillo.com
FLOYD R. HARTLEY, JR. (*pro hac vice pending*)
Email  fhartley@godwinronquillo.com
GAVIN E. HILL (*pro hac vice pending*)
Email  ghill@godwinronquillo.com
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. ALAN YORK (*pro hac vice*)
Email    ayork@godwinronquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

and

**s/ John N. Leach**
JOHN N. LEACH  (LEACJ2634)
Email    jnl@helmsinglaw.com
JOSEPH P. H. BABINGTON  (BABIJ7938)
Email    jpb@helmsinglaw.com
RUSSELL C. BUFFKIN  (BUFFR6510)
Email    rcb@helmsinglaw.com
**HELMSING, LEACH, HERLONG, NEWMAN
& ROUSE, P.C.**
Post Office Box 2767
Mobile AL 36652
Telephone:  251.432.5521
Facsimile:  251.432.0633

**ATTORNEYS FOR DEFENDANT,
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 23rd day of June, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

Robert T. Cunningham, Jr., Esquire
Steve Olen, Esquire
Steven L. Nicholas, Esquire
Lucy Elizabeth Tufts, Esquire
CUNNINGHAM, BOUNDS, LLC
Post Office Box 66705
Mobile, AL 36660
***Counsel for Plaintiffs***

George R. Irvine, III, Esquire
STONE, GRANADE & CROSBY, PC
7133 Stone Drive
Daphne, AL 36526
***Counsel for Plaintiffs***

John M. Johnson, Esquire
Adam K. Peck, Esquire
William H. Brooks, Esquire
Marchello D. Gray, Esquire
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
400 North 20th Street
Birmingham, AL 35203
***Counsel for BP America, Inc.,***
***BP Products North America, Inc. and***
***BP Exploration and Production, Inc.***

Richard C. Godfrey, Esquire
John T. Hickey, Jr., Esquire
James Andrew Langan, Esquire
KIRKLAND & ELLIS, LLP
300 N. LaSalle
Chicago, IL 60654
***Counsel for BP America, Inc.,***
***BP Products North America, Inc. and***
***BP Exploration and Production, Inc.***

A. Danner Frazer, Jr., Esquire
Robert J. Mullican, Jr., Esquire
FRAZER GREENE UPCHURCH & BAKER
Post Office Box 1686
Mobile, AL  36633
***Counsel for Cameron International Corp.***

David J. Beck, Esquire
BECK, REDDEN & SECRET, LLP
One Houston Center
1221 McKinney Street, Suite 4500
Houston, TX 77010
***Counsel for Cameron International Corp.***

Blane H. Crutchfield, Esquire
Douglas L. McCoy, Esquire
HAND ARENDALL LLC
Post Office Box 123
Mobile, AL 36601
***Counsel for Transocean Deepwater, Inc. and***
***Transocean Deepwater Offshore Drilling,***
***Inc. and Transocean Holdings LLC***

Transocean, Inc.
The Prentice Hall Corporation System, Inc.
2711 Centerville Road, Suite 400
Wilmington, DE  19808

BP plc
International Headquarters
1 St. James Square
London, SW1Y 4PD  UK

s/ John N. Leach
Of counsel